UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ALAN W. JACKSON, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) Civil No. 1:09-cv-00596-JAW |
| | ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) |
| | ) |
|     Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Alan Jackson, 41 years old as of the amended alleged onset of disability in February 2002, has severe impairments consisting of alcohol abuse and chronic obstructive pulmonary disease, can no longer perform the work he once did, but retains the functional capacity to perform substantial gainful activity, including specific jobs existing in significant numbers in the national economy, resulting in a denial of Jackson's application for disability benefits under Title II and Title XVI of the Social Security Act. Jackson commenced this civil action for judicial review of the final administrative decision, alleging errors at Steps 2, 4, and 5 of the five-step sequential evaluation process. The case returns from a prior remand order on an unopposed motion to reverse and remand filed by the Commissioner. I recommend that the Court affirm and enter judgment for the Commissioner.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Manso-Pizarro v. Sec'y of Health</u>

& Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion of Plaintiff's Statement of Errors**

The Commissioner's final decision is the January 23, 2007, decision of the Administrative Law Judge (R. 15-22) because the Appeals Council reviewed it and determined that there was no reason to assume jurisdiction (R. 273). The following discussion tracks the five-step sequential evaluation process, as does the Administrative Law Judge's decision.

The Administrative Law Judge found that Mr. Jackson has not engaged in substantial gainful activity since March 1, 1997, the date of alleged onset of disability, thereby checking off Step 1 of the sequential evaluation process. (Finding 2, R. 288.)

At Step 2, the Judge found that Jackson's only severe limitation is chronic obstructive pulmonary disease and that alcohol abuse, depression, and back pain are not severe impairments. (Finding 3, R. 288.) Jackson alleges error at Step 2 in regard to depression, which he says is a severe limitation for vocational purposes. (Statement of Errors at 1-2, Doc. No. 10.)

At Step 3, the Judge found that Jackson's combination of impairments did not meet

or equal any of the impairments identified in the Commissioner's Listing of Impairments. (Finding 4, R. 289.) This finding is not challenged.

At Step 4, the Judge found that Jackson has the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally, to sit for at least six hours in an eight-hour workday, and to stand or walk for at least six hours in an eight-hour workday. In addition, the Judge found that Jackson should avoid respiratory irritants including odors, dusts, fumes, gases, and poor ventilation. Because of these restrictions, the Judge found that Jackson can no longer engage in past relevant work as a janitor, lumberjack, plumber, and maintenance person. (Finding 6, R. 293.) Jackson alleges error in regard to the residual functional capacity finding because it omits alleged difficulties maintaining concentration, persistence, and pace, which are said to arise from severe depression. (Statement of Errors at 3.)

At Step 5, the Judge found that Jackson could successfully engage in other work existing in significant numbers in the national economy based on vocational expert testimony related to the occupation of assembler, printed circuit board. (Finding 10, R. 294.) Jackson alleges error based on the vocational expert's testimony about irritants associated with the electronics work, including potential exposure to odors arising from co-worker perfume. (Statement of Errors at 4-6.)

**A.     Step 2**

At Step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or combination of impairments that meets

the durational requirement of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant's burden at Step 2 is a *de minimis* burden, designed to do no more than screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination at Step 2 that the impairment is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At Step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. §§ 404.1528(a), 416.928; Social Security Ruling 85-28.

In the course of processing Jackson's applications, the Maine Disability Determination Services referred Mr. Jackson and/or his medical records to various consulting experts. In September 2004, Dr. Kenneth Kindya, Ph.D., conducted a clinical interview and administered a mini-mental status exam and M-FAST following a referral for psychological evaluation. (Ex. 10F, R. 259.) Dr. Kindya diagnosed alcohol abuse and nicotine dependence, exclusively, for mental disorders. (R. 261.) He indicated: "No cognitive problems or other psychological problems found." However, Dr. Kindya circled "often" in relation to maintaining attention/concentration, persistence or pace (R. 262), suggesting a mental impairment that might have more than a minimal impact on Jackson's ability to work.

According to the Administrative Law Judge: "While Dr. Kindya also opined that

4

the claimant would often have difficulty maintaining attention, concentration, persistence, and pace, he gave the claimant a global assessment of functioning score of 65, indicating only mild limitations in his ability to function." (R. 292.) Prior to making this observation, the Judge indicated that the record could not support the existence of a severe depressive disorder not only because there has never been a hospitalization or referral for psychotherapy, but also because there is not even evidence of a prescription for psychotropic medication. (R. 291.) In his statement of errors, Jackson relies entirely on Dr. Kindya's assessment and on his own representations. He does not cite any other medical records indicating the presence of severe depression, let alone medical evidence that any deficit in relation to attention or concentration, persistence, or pace exists as a consequence of depression.[1]

Neither the plaintiff's testimony, nor the entries he may have made on forms reporting his symptoms, is medical evidence, and medical evidence is necessary to support a finding of a severe impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a). Given the state of the record and the opinion expressed by Dr. Kindya, a reasonable mind might well accept that Jackson does not suffer from severe depression. A more natural reading of Dr. Kindya's evaluation is that Dr. Kindya was of the opinion that Jackson may "often" experience attention or concentration, persistence, and pace limitations if he has been

---

[1] At the second administrative hearing, Jackson's representative stated that there was some support for a mental impairment in "the Eastern Maine Medical Center records." They are in the record at pages 180-209. They reflect that care providers suggested a psychiatric consultation during an inpatient stay that arose after Jackson's wife stabbed him with a knife. (R. 180-81.) The suggestion that a consultation might be beneficial is not medical evidence of a concentration, persistence, and pace limitation associated with depression.

abusing alcohol.[2] Jackson does not argue that the Judge erred for failing to treat Dr. Kindya's evaluation as evidence of a limitation stemming from alcohol abuse. Presumably, this is because Jackson cannot demonstrate harm at Step 4 or Step 5 based on an argument that he is disabled by dint of a limitation that only exists when he abuses alcohol.

In 1996, Congress enacted legislation to preclude disability benefits in those cases where alcoholism or drug addiction is a contributing factor material to the determination of disability. See 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); Contract with America Advancement Act of 1996, Pub. L. 104-121 § 105, 110 Stat. 847, 852-55 (1996). Pursuant to the regulations, the "key factor" in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the person would still be disabled if she stopped using drugs or alcohol. Id. §§ 404.1535(b)(1), 416.935(b)(1). As a matter of law, even if Jackson could rely entirely on Dr. Kindya's evaluation to carry his burden of proof, Dr. Kindya's opinion does not state that Jackson would experience difficulties in attention or concentration, persistence, and pace even if he stopped abusing alcohol.[3] To the contrary, Dr. Kindya indicated that he found "no cognitive problems or other psychological problems" (R. 262) and that Jackson is psychologically "OK" as long as he abstains from "ETOH," an abbreviation for ethanol

---

[2] The medical expert who testified at Jackson's second hearing had the same assessment of Dr. Kindya's evaluation. He also indicated that there was no other evaluation in the record for Jackson to point to in support of a depression diagnosis. (R. 334.) Jackson's representative at the hearing recognized that this reading of Dr. Kindya's evaluation was reasonable, but sought an alternative, albeit strained, inference that Dr. Kindya was suggesting the presence of some other mental impairment. (R. 355-56.)

[3] At the first administrative hearing on December 20, 2004, Jackson's hearing representative stated that Jackson was not alleging any mental impairment. (R. 27-28.) He also stated that the concentration, persistence, and pace limitation was attributed to drinking rather than a psychological issue. (R. 27.)

6

(R. 263).

**B.     Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his or her residual functional capacity does not permit the performance of past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. §§ 404.1520(f), 416.920(f). As a component of proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003).

Jackson's Step 4 argument is that the Judge erred in omitting a concentration, persistence, and pace restriction associated with his alleged depression. As previously discussed, Jackson has failed to adduce reliable medical evidence of severe depression that causes a concentration, persistence, and pace limitation. Consequently, it was not error for the Judge to reject Jackson's subjective complaints of disabling symptoms arising from depression.

Despite failing to demonstrate a concentration, persistence, and pace limitation, Jackson did succeed in establishing that he is limited to work requiring no more than light

7

exertion and work that would not require exposure to odors, dusts, fumes, gases, and poor ventilation. Because of these restrictions, the Judge found that Jackson can no longer engage in past relevant work as a janitor, lumberjack, plumber, and maintenance person. (Finding 6, R. 293.) Consequently, Jackson made it beyond Step 4 of the sequential evaluation process even without proving any concentration, persistence, and pace limitation.

**C.     Step 5**

At Step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform, other than the claimant's past relevant work. 20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen, 482 U.S. at 146 n.5; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). This burden shift is limited to producing substantial evidence that a reasonable mind would accept as adequate to demonstrate the existence of other work the claimant can do. The Commissioner must prove that the claimant's RFC, age, education, and work experience enable the performance of other substantial work. Ordinarily, the Commissioner will meet the Step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). At hearing the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's RFC and vocational profile. Id.

The Judge relied on the testimony of a vocational expert to support his finding that there is work existing in significant numbers that a hypothetical claimant with Jackson's RFC and vocational profile could perform. According to the vocational expert, such a person could engage in the occupation of "[pre]assembler, printed circuit board," with a Dictionary of Occupational Titles code of 726.687-038, categorized as light duty, specific vocational preparation level 2, with 400 plus jobs in the regional economy.

The Dictionary of Occupational Titles code provided by the vocational expert corresponds to an occupation titled "preassembler, printed circuit board." The distinction between "assembler" and "preassembler" is potentially significant, because there is an assembler occupation (DOT # 726.684-070) that is SVP level 4 and requires exposure to solder and sealer or masking compound. Mr. Jackson argues that the Court should remand based on the vocational expert's omission of the "pre" from the title because it has created an ambiguity that prevents a finding of substantial evidence in support of the Administrative Law Judge's finding. At oral argument, counsel for Jackson referenced Riley v. Astrue, 06-95-B-W, were the Court cautioned the Commissioner that it is an administrative law judge's duty to clear up sloppy vocational expert testimony, including possible conflicts with the Dictionary of Occupational Titles and that "corrections to vocational-expert testimony tendered for the first time on appeal to this court will not be considered." 2007 WL 1266904, *3, 2007 U.S. Dist. Lexis 23028, *9. This case is not on par with Riley. Here, unlike in Riley, the code number, the SVP level, and essentially all of the occupation's title are consistent. The vocational expert referenced the DOT code connected to the preassembler occupation and emphasized in his testimony (R. 364)

that the jobs he looked at for Mr. Jackson were rated SVP 2 (or lower). The mere omission of the prefix "pre" is not a sufficient basis to remand a case.

Jackson also challenges the finding that the preassembler occupation is consistent with his respiratory condition. According to the vocational expert, the assembler (actually, preassembler) occupation would not expose a worker to respiratory irritants because it is performed in a clean environment. (R. 361-62.) The definition found in the Dictionary of Occupational Titles corresponds with the vocational expert's description, as he testified it would. Unlike the other circuit board assembly occupations discussed at the hearing, preassembler, printed circuit board does not involve odors, fumes, or gases. The closest reference is to affixing labels and tape to boards. In comparison, "printed circuit board assembler, hand" (DOT #726.684-070) involves use of a heat gun to shrink plastic sleeves, application of sealer or masking compound, and soldering. To be sure, the hearing transcript is not pretty, but it holds together.

Jackson argues that the vocational expert's testimony was ambiguous about exposure to environmental irritants because he suggested adhesives might present an environmental concern. (R. 363.) A review of the transcript reflects that the concern over adhesive exposure was associated with a different occupation described as "assembler, electronic circuit board." As for the preassembler, printed circuit board occupation, the vocational expert testified that there is nothing in the DOT definition to suggest an environmental concern. (R. 365.) Moreover, the record does not establish, for purposes of a Step 4-RFC finding, that Jackson would not be able to apply labels and tape to boards, even if it would support an inference that he cannot perform work requiring

10

use of "adhesives."

Jackson's remaining argument is that the vocational expert could not unequivocally rule out the possibility that he might be exposed to incidental irritants such as perfume and deodorant worn by co-workers, or similar irritants like dust or exhaust fumes encountered in a parking lot. (R. 366-67.) This argument does not warrant a remand. In his Step 4 finding the Judge indicated that Jackson alleges an inability to tolerate "even casual exposure to respiratory irritants," but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 289.) In reviewing the record for substantial evidence, the Court must keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The Judge expressly rejected Jackson's allegations that multiple commonplace environmental triggers would set him off even upon casual exposure. (R. 291.) The Judge permissibly found this allegation was not credible based, in part, on medical expert testimony that Jackson's pulmonary function studies were "quite good" despite Jackson's failure to treat his condition with any recommended medication and based, in part, on the fact that Jackson smokes two or more packs of cigarettes per day. (R. 290.) In the absence of any medical evidence associated with environmental exposure to commonplace irritants, there is nothing of significant weight to countermand the Judge's credibility evaluation and, consequently, it should stand. The Judge permissibly found that Jackson should be limited to work that will not expose him to odors, dusts, fumes, gases, and poor ventilation as a condition of

performing work tasks, without finding that Jackson's condition is so severe as to prevent him from working in the presence of others or in an environment where air quality is specifically controlled. In light of this Step 4 finding, the vocational expert's testimony supplies substantial evidence that there are jobs existing in significant numbers in the national economy that Jackson can perform.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Administrative Law Judge's decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 24, 2010